UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                        :
RACHEL MEYERS,               :
                        :
                Plaintiff,   :              20-CV-9645 (VSB)
                        :
         - against -      :       **OPINION & ORDER**
                        :
PORT AUTHORITY OF TRANS HUDSON  :
(PATH), et al.,            :
                        :
                Defendants.  :
---------------------------------------------------------X

Appearances:

Rachel Meyers
New York, New York
*Pro se Plaintiff*

Thomas Robert Brophy
New York, New York
*Counsel for Defendants Port Authority Trans Hudson (PATH), Port Authority of NY/NJ, Millard*
*Corbett, Moyaah Phillips, David Volk, Raisha Haines*

Dana Elizabeth Lossia
Levy Ratner, P.C.
New York, New York
*Counsel for Defendants the Brotherhood of Locomotives, Engineers, and Trainmen (BLET)*

VERNON S. BRODERICK, United States District Judge:

       Before me is the partial motion to dismiss the Amended Complaint filed by Defendants

Port Authority Trans Hudson ("PATH"), Port Authority of NY/NJ ("Port Authority"), Millard

Corbett (improperly named as Corbett Millard) ("Corbett"), Moyaah Phillips ("Phillips"), David

Volk ("Volk"), and Raishea Haines ("Haines"), (Doc. 36), and a motion to dismiss Plaintiff's

Amended Complaint in its entirety filed by the Brotherhood of Locomotives, Engineers, and

Trainmen, Local 497-PATH ("BLET"), (Doc. 42.)

The partial motion to dismiss filed by Defendants PATH, Port Authority, Corbett, Phillips, Volk, and Haines is GRANTED because Plaintiff's causes of action cannot lie against these parties or do not provide a cause of action. Defendant BLET's motion to dismiss the claims in their entirety is also GRANTED because the conduct alleged does not state a claim for breach of the duty of fair representation.

## I.   **Factual Background**[1]

On December 28, 2018, Plaintiff began working at PATH as a Temporary Passenger Information Agent. (Am. Compl. ¶ 15.)[2] On July 29, 2019, Plaintiff entered training to become a Switching Engineer. (*Id.* ¶ 24.) Plaintiff was the only Black woman in the training class. (*Id.* ¶ 27.) During her training, Plaintiff was also pregnant. (*Id.* ¶ 28.) The two supervising instructors during Plaintiff's training were Corbett and Phillips. (*Id.* ¶ 25.) Volk and Haines were Corbett's and Phillips's supervisors. (*Id.*)

Plaintiff provided a doctor's note explaining that, due to her pregnancy, she could not complete certain physical tasks. (*Id.* ¶ 28.) She alleges that she was reprimanded for using the restroom and criticized for the way she mounted the trains, and that her complaints regarding these matters were ignored. (*Id.* ¶¶ 30–34.) Plaintiff alleges that Corbett made sexually inappropriate comments throughout the training. (*Id.* ¶¶ 39–42, 61–63.) Plaintiff alleges Phillips and Corbett treated her differently, referred to her race and gender during evaluations, verbally attacked her during training sessions, forced her to complete difficult tasks, ignored her during class, and reprimanded her for her inability to do certain tasks. (*Id.* ¶¶ 57, 64–75, 77–78, 81–87.)

---

[1] The following factual summary is drawn from the allegations in the Amended Complaint, (Doc. 31), which I assume to be true for purposes of these motions. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint filed on April 16, 2021. (Doc. 31.)

Plaintiff made a recording of one instance of misconduct by Corbett and Phillips.  (*Id*. ¶ 115.)

On July 29 and 30, 2019, Plaintiff notified Corbett and Phillips that she was summoned for jury service.  (*Id*. ¶ 89.)  She attempted to give the summons to the Assignments Department[3] and to Volk, but they rejected it.  (*Id*. ¶¶ 90–92.)  She attended jury duty on August 12, 13, and 14, 2019.  (*Id*. ¶ 95.)  Upon her return, Plaintiff learned she was removed from a trainee group chat, was not allowed to use gloves other trainees used, and that she missed a quiz.  (*Id*. ¶¶ 93, 98.)

On August 5, 2019, Plaintiff contacted Ben Lau ("Lau") in the Port Authority's Human Resources section about her concerns.  (*Id*. ¶ 100.)  She exchanged some emails and phone calls with Lau and other Human Resources representatives following that conversation.  (*Id*. ¶¶ 102–08.)  Plaintiff alleges she then met with Volk and Haines, and Volk refused to help her and instead threatened to label her "insubordinate."  (*Id*. ¶ 111.)  On August 16 and 20, 2019, Plaintiff met with someone from PATH's Employee Relations Department to discuss her concerns, (*id*. ¶¶ 113–16, 118), but was told that the department could not help her with her concerns, (*id*. ¶ 119).

On August 28, 2019, Plaintiff met with Volk and Haines.  (*Id*. ¶ 120.)  Volk accused her of being late, using the restroom too frequently, making the classroom hostile, and recording Corbett and Phillips.  (*Id*. ¶¶ 120–22.)  Plaintiff was also told that her classmates felt unsafe "operating" with her, (*id*. ¶ 120), and that she was "not allowed to return to class the next day," (*id*. ¶ 123).  The next day, Plaintiff met with Volk, Haines, someone from the Employee Relations Department, and some representatives from her union, BLET.  (*Id*. ¶ 124.)  She was threatened with "being held out of service" if she did not turn over the recording she made of

---

[3] The Amended Complaint does not provide a description of the responsibilities of the Assignments Department.

Corbett and Phillips.  (*Id*. ¶ 130.)  Volk claimed to not have known about Plaintiff's pregnancy

accommodations request, her complaints to Human Resources, or the recording before this

meeting.  (*Id*. ¶ 131.)

On September 3, 2019, Phillips and Corbett gave Plaintiff a poor evaluation for

punctuality.  (*Id*. ¶ 133.)  Plaintiff alleges she was never late during training.  (*Id*.)  That same

day, the instructors sent Plaintiff to meet with Volk and Haines, (*id*. ¶ 135), and the next day

Volk and Haines suspended Plaintiff without written notice or reason, (*id*. ¶ 137).  Plaintiff

alleges she was never paid for the five and a half hours she worked that day.  (*Id*. ¶ 139.)

On September 11, 2019, a letter charging Plaintiff with violations of the PATH employee

rules was mailed to the wrong address.  (*Id*. ¶ 140.)  Plaintiff claims she did not violate the

PATH rule related to good conduct.  (*Id*. ¶ 141.)

Plaintiff attended two investigative hearings, one on October 21, and one on October 29,

2019, before a PATH hearing officer.  (*Id*. ¶ 142.)  She was not paid for her time at these

hearings and was not allowed to ask specific questions.  (*Id*.)  On November 13, 2019, a

termination letter was mailed to Plaintiff at the wrong address.  (*Id*. ¶ 143.)  Plaintiff claims the

reasons for her termination were "semblance, veneer, and purely pretextual" and had no

supporting facts or bases in truth.  (*Id*. ¶¶ 144–57.)

With regard to Plaintiff's claims against BLET, she alleges that BLET representatives

attended the majority of the meetings in which she discussed her concerns, but did not represent

her, did not speak up for her, and did not immediately respond when she requested

documentation or assistance filing a grievance.  (*Id*. ¶¶ 216, 220, 229–30, 232–37, 239, 244–45.)

She alleges the representatives did not provide her with documentation before her investigative

hearings and did not actively defend her at the hearings.  (*Id*. ¶¶ 231–32, 234–36, 243–44.)  She

also alleges the BLET representatives "deliberately sent mail correspondence" to the wrong

address "which nearly hindered [her] from participating in the arbitration proceeding." (*Id.* ¶

240.)

## II.   **Procedural History**

Plaintiff initiated this action by filing a complaint on November 16, 2020.  (Doc. 2.)  On

April 16, 2021, Plaintiff filed an Amended Complaint.  (Am. Compl.)  Plaintiff alleges in the

Amended Complaint that her employer discriminated against her or denied her reasonable

accommodations on the basis of her race, sex, and pregnancy, in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.[4], the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., the Rehabilitation Act, codified at 29

U.S.C. §§ 701 et seq., and perceived disability, in violation of the Americans with Disabilities

Act of 1990, 42 U.S.C. §§ 12112 et. seq.  Plaintiff also asserts claims against Corbett, Phillips,

Volk, and Haines (together, the "Individual Defendants") under the NYSHRL; the Back Pay Act,

5 U.S.C § 5596; the New Jersey Law Against Discrimination (the "NJLAD"), N.J. Stat. Ann. §§

10:5-1 et seq.; the New Jersey Conscientious Employee Protection Act (the "CEPA"), N.J. Stat.

Ann. § 34:19-1, et seq.; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C.

Admin. Code § 8–107(1)(a), (7).  Finally, Plaintiff asserts that her employer breached the

applicable collective bargaining agreement with her union, BLET, and that BLET failed in its

duty to fairly represent her, under 29 U.S.C. § 158 of the National Labor Relations Act and 29

U.S.C. §§ 185(a), et seq. of the Labor-Management Relations Act.

On April 29, 2021, Defendants PATH, the Port Authority, and the Individual Defendants

---

[4] Plaintiff also alleges violations of the Lily Ledbetter Fair Pay Act of 2009, (Am. Compl. ¶¶ 179–80), which modified Title VII, *Vuong v. New York Life Ins. Co.*, No. 03CIV.1075(TPG), 2009 WL 306391, at *9, and which I address as needed as part of Plaintiff's claims under Title VII.

filed a partial motion to dismiss the claims under the Jury System Improvement Act, the Back Pay Act, and claims for punitive damages against Defendants Port Authority and PATH; and dismissal of the New York and New Jersey state law claims against the Individual Defendants; and for dismissal of the claims under the NYSHRL, the NYCHRL, the LAD, and CEPA against PATH and the Port Authority.  (Doc. 36.)  On that same day, Defendants also filed a supporting memorandum of law.  ("MTD.")[5]  On May 24, 2021, Plaintiff filed an opposition memorandum of law to the partial motion to dismiss, ("MTD Opp."),[6] and Defendants filed a reply memorandum of law on June 8, 2021, ("MTD Reply").[7]

On May 14, 2021, BLET filed a motion to dismiss all of Plaintiff's claims as untimely and for failure to state a claim upon which relief may be granted, (Doc. 42), and a supporting memorandum of law, ("BLET MTD.")[8]  Plaintiff filed an opposition memorandum of law on June 11, 2021.  ("BLET Opp.")[9]  BLET filed a reply memorandum of law on July 21, 2021. ("BLET Reply.")[10]

## III.   Legal Standards

### A.  *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[5] "MTD" refers to the memorandum of law, (Doc. 37), in support of non-BLET Defendants' partial motion to dismiss, (Doc. 36).

[6] "MTD Opp." refers to Plaintiff's memorandum of law, (Doc. 46), in opposition to non-BLET Defendants' partial motion to dismiss, (Doc. 36.)

[7] "MTD Reply" refers to non-BLET Defendants' reply memorandum of law.  (Doc. 51.)

[8] "BLET MTD" refers to BLET's memorandum of law, (Doc. 43), in support of its motion to dismiss, (Doc. 42.)

[9] "BLET Opp." refers to Plaintiff's memorandum of law, (Doc. 53), in opposition to BLET's motion to dismiss, (Doc. 42.)

[10] "BLET Reply" refers to BLET's reply memorandum of law.  (Doc. 57.)

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor."  *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

## B.  *Pro se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest."  *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted).  Consistent with the duty to liberally construe a pro se plaintiff's pleading, a court can also consider allegations contained in opposition papers.  *See Henning*, 2016 WL 297725, at *3; *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering affidavit submitted in opposition to defendants' motion to dismiss in reviewing district court's dismissal of pro se plaintiff's claims).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV.   Discussion

### A.  *Partial Motion to Dismiss of Port Authority, PATH, and the Individual Defendants*

#### 1.  Jury System Improvement Act

Defendants Port Authority and PATH move to dismiss Plaintiff's Jury System Improvement Act (the "Jury Act") claims for failure to state a claim.  The Jury Act protects employees from discharge, threats to discharge, intimidation, or coercion by employers based on the employee's jury service "in any court of the United States."  28 U.S.C. § 1875.  "Court of the United States" is defined in relevant part as "the Supreme Court of the United States, courts of appeals, [and] district courts constituted by chapter 5 of this title."  28 U.S.C. § 451.  Thus, the Jury Act provides "for monetary and injunctive relief, as well as a civil penalty for discharge or threatened discharge of an employee by reason of such person's federal jury service."  *Shea v.*

*Rockland Cnty.*, 810 F.2d 27, 28 (2d Cir. 1987); *see also Pereira v. United States,* 84 Fed. Cl.

597, 601 (Fed. Cl. 2008) ("Because plaintiff's alleged wrong arises out of service on

a state jury, 28 U.S.C. § 1875 does not apply."); *Schwinge v. Deptford Twp. Bd. of Educ.,* No.

CIV. 09-5964 RBK JS, 2011 WL 689615, at *4 (D.N.J. Feb. 17, 2011) ("[T]he Jury System

Improvement Act's] protections apply only if the employee serves on a jury in federal court.");

*but see Aumporn Wongkiatkachorn v. Cap. One Bank*, No. 09CIV9553, 2010 WL 3958764, at *1

(S.D.N.Y. Oct. 5, 2010) (permitting, without considering the issue, a claim based on state jury

service to proceed).

     Plaintiff alleges that Defendants violated the Jury Act by retaliating against her for her

service on a state jury.  (Am. Compl. ¶¶ 89–99, 183–85; MTD Opp. 2–3.)  Although she did not

serve on a federal jury, she argues that I should construe the statute's application to service on a

jury "in any court of the United States" to include state jury service as well.  (MTD Opp. 2–3.)

That argument is foreclosed by the definition of "court of the United States" which is explicitly

restricted to federal courts.  28 U.S.C. § 451.  Such an interpretation would also be inconsistent

with Congress's stated purpose "to provide statutory protection for the continued employment of

persons summoned to federal jury service."  H.R. Rep. 95–1652, 95th Cong., 2d Sess., at 15

(1978), U.S. Code Cong. & Admin. News 1978, pp. 5477, 5488.  Accordingly, the Jury Act does

not provide Plaintiff with a cause of action against the Port Authority and PATH because her

claims arise out of state jury duty.

     While Plaintiff did not plead claims based on state jury protections, she raises them in her

opposition motion, and I address those claims below in the context of her other state law claims.

## 2.  State Law Claims

### a.  State Antidiscrimination Laws

PATH, the Port Authority, and the Individual Defendants move to dismiss the state law

discrimination claims against them because the state laws do not apply to the Port Authority and

PATH, and by extension for acts done by their employees in the course of their duties.  (MTD 3–

7.)  The Port Authority was created in 1921 by a bi-state compact entered into between the states

of New York and New Jersey and approved by Congress.  *Sullivan v. Port Auth. of New York &*

*New Jersey*, 157 A.3d 451, 455–56 (App. Div. 2017).  PATH "is a wholly-owned subsidiary of

the Port Authority."  *Goodman v. Port Auth. of New York & New Jersey*, No. 10 CIV. 8352

RWS, 2013 WL 5313427, at *1 (S.D.N.Y. Sept. 20, 2013).  "The Port Authority is not the

agency of a single state but rather a public corporate instrumentality of New Jersey and New

York."  *Id.* (quoting *Bunk v. Port Auth. of New York & New Jersey,* 676 A.2d 118 (N.J. 1996)).

Because of its bi-state compact, neither state may unilaterally impose duties, powers, or

responsibilities on the Port Authority without the other's consent.  *Id.*; *see also Hess v. Port*

*Auth. Trans–Hudson Corp.,* 513 U.S. 30, 42 (1994) ("bistate entities created by compact . . . are

not subject to the unilateral control of any one of the States that compose the federal system").

Neither New York nor New Jersey antidiscrimination laws extend to the Port Authority

because the unilateral application of one state's law on the Port Authority would violate the bi-

state compact.  *Dezaio v. Port Auth. of New York & New Jersey*, 205 F.3d 62, 65–66 (2d Cir.

2000).  Thus, CEPA does not extend to the Port Authority absent an express provision allowing

application.  *Sullivan,* 157 A.3d at 456–57; *Alpert v. Port Auth. of New York & New Jersey*, 121

A.3d 427, 429 (Law. Div. 2015).  Similarly, the NJLAD does not apply to the Port Authority

either.  *Hip Heightened Indep. & Progress, Inc. v. Port Auth. of New York & New Jersey*, 693

F.3d 345, 358 (3d Cir. 2012) ("[J]ust as the *Dezaio* Court found that New York employment discrimination laws could not be applied to the Authority, so too is New Jersey barred from applying its civil rights and construction code statutes to the Authority.")  The same is true of the NYSHRL and NYCHRL.  *Settecase v. Port Auth. of New York & New Jersey*, 13 F. Supp. 2d 530, 535–36 (S.D.N.Y. 1998) (collecting cases); *Barbella v. N.Y., N.J. Port Authority*, No. 97 CIV. 8553 (RWS), 1999 WL 1206692, at \*4 (S.D.N.Y. Dec. 15, 1999).  Because Plaintiff's allegations are within the scope of her employment, the state laws also do not apply to the Individual Defendants.  *See Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 281–82 (S.D.N.Y. 2002), *decision clarified on reconsideration sub nom. Evans v. Port Auth. of New York*, No. 00 CIV.5752 LAK, 2002 WL 1941557 (S.D.N.Y. Aug. 22, 2002) ("Defendants are correct that the respective antidiscrimination laws of New York and New Jersey do not apply to the [Port] Authority because it is an agency created by an interstate compact.  *A fortiori,* they do not apply to the [Port] Authority's agents acting in their capacities as such."); *Ballinger v. Delaware River Port Auth.*, 709 A.2d 1336, 1342 (N.J. Super. Ct. App. Div. 1998), *aff'd*, 800 A.2d 97 (N.J. 2002) (finding that because CEPA did not apply to a bi-state compact, it did not apply to individual defendant employees who were acting within their official capacity).

Plaintiff urges that I "infer that the legislature intended the [state antidiscrimination laws] to apply to the activities of bi-state agencies."  (MTD Opp. 4.)  This, however, is inconsistent with the law governing the application of interstate compacts to the Port Authority.  Accordingly, I join the numerous courts that have similarly held that CEPA, NJLAD, NYSHRL, and NYCHRL are not applicable to the Port Authority.  For this reason, I dismiss these claims against Defendants PATH, Port Authority, and the Individual Defendants.

b. <u>State Jury Duty Protection Claims</u>

The Individual Defendants move to dismiss the state law claims under N.Y. Jud. Ct. Acts Law § 519 and N.J. Stat. Ann. § 2B:20-17. As discussed *supra*, without express consent, unilateral application of one state's law on the Port Authority's internal operations would violate the bi-state compact. *Dezaio*, 205 F.3d at 65–66. Plaintiff argues that I should nonetheless deem the statutes "substantially similar" and apply each state's law to the Port Authority. (MTD Opp. 5–6.) Even liberally construing this argument, both of these state law claims fail for the reasons below.[11]

*i. New York Jury Protection Statute*

The New York statute makes clear that a violation constitutes a criminal contempt of court charge. N.Y. Judiciary Law § 519. There is no private right of action under the statute. *See Arnold v. New York State Div. of Human Rights*, 894 N.Y.S.2d 432 (1st Dep't. 2010); *Di Blasi v. Traffax Traffic Network*, 681 N.Y.S.2d 147 (3rd Dep't. 1998); *Gomariz v. Foote, Cone & Belding Communications*, Inc., 644 N.Y.S.2d 224 (1st Dep't. 1996). For this reason, Plaintiff's claim against the Individual Defendants under this statute is dismissed.

*ii. New Jersey Jury Protection Statute*

The New Jersey jury protection statute prohibits an employer from penalizing an employee regarding employment or threatening or otherwise coercing an employee with respect to employment, because the employee is required to complete jury service. N.J. Stat. Ann. § 2B:20-17. The statute contains a limitations period of 90 days "from the date of the violation or

---

[11] The New Jersey Supreme Court has held that bi-state agencies can be sued under state law only if (1) the relevant compact expressly authorizes jurisdiction by a single state, (2) the two states have "complementary or parallel legislation" or (3) the agency consents by implication to the exercise of a single state's jurisdiction. *Ballinger*, 709 A.2d at 1340. The Second Circuit has not adopted this framework. *See, e.g., Dezaio*, 205 F.3d 62. I therefore need not and do not analyze whether New Jersey and New York have complementary or parallel legislation for purposes of unilaterally applying one state's jury protection statute to the Port Authority or PATH.

the completion of jury service, whichever is later." *Id*. Plaintiff served on jury duty from August 12 to August 14, 2019, and was terminated in late 2019. (Am. Compl. ¶¶ 95, 143.) Defendants argue that the limitations period had already expired when Plaintiff filed her original complaint on November 16, 2020. (MTD Reply 2–3.) Plaintiff contends that she did not become aware of the fact she was terminated due to her jury service until the "date of the arbitration hearing" on October 29, 2020, and thus her initial complaint was timely. (MTD Opp. 6.)

The statute's limitations period begins to run from the date of the violation or the completion of jury service, whichever is later. N.J. Stat. Ann. § 2B:20-17. New Jersey courts construe the "date of the violation" as the date of termination or the date of notice of termination in wrongful termination actions. *See Alderiso v. Med. Ctr. of Ocean Cty., Inc.*, 770 A.2d 275, 277 (N.J. 2001) (under CEPA, the cause of action accrues on the date of actual discharge); *Roa v. Roa*, 985 A.2d 1225, 1233 (2010) ("[A] discharge is a discrete discriminatory act that places an employee on notice of the existence of a cause of action and of the need to file a claim. The statute of limitations begins to run on the day that act takes place.").

Here, Plaintiff's employment was terminated on November 13, 2019, though she reports that the letter informing her of her termination was sent to the wrong address. (Am. Compl. ¶ 143.) As Plaintiff filed her complaint on November 16, 2020, (*see* Am. Compl.), the date of violation could not have been earlier than August 18, 2020, to be within the statute of limitations period. Even accepting that Plaintiff was not aware of her termination on November 13, 2019, it is not plausible, and Plaintiff does not suggest, that she did not become aware of her termination sometime in the roughly nine months between November 13, 2019, and August 18, 2020, so her complaint is past the expiration of the ninety-day statute of limitations period. I therefore dismiss Plaintiff's claim under the New Jersey statute as untimely.

### 3.  Back Pay Due to Unjustified Personnel Act

Plaintiff concedes that she has no cause of action against PATH, the Port Authority, or the Individual Defendants under 5 U.S.C. § 5595.  (MTD Opp. 2.)  I therefore dismiss all claims under the Back Pay Act.

### 4.  Punitive Damages Against the Port Authority and PATH

Plaintiff concedes that the Port Authority and PATH are not subject to punitive damages and does not oppose dismissal of these claims.  (MTD Opp. 8–9.)  I therefore dismiss the claims for punitive damages against the Port Authority and PATH.

### B.  *BLET's Motion to Dismiss*

BLET moves to dismiss Plaintiff's Amended Complaint in its entirety on the basis that it is untimely or, in the alternative, because Plaintiff does not adequately state a claim that BLET violated its duty of fair representation.

### 1.  Statute of Limitations

Duty of fair representation ("DFR") claims against a union are subject to a six-month statute of limitations.  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014).  "[I]t is well settled that 'the cause of action [for DFR] accrue[s] no later than the time when plaintiffs knew or reasonably should have known that such a breach . . . had occurred, even if some possibility of nonjudicial enforcement remained.'"  *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995) (quoting *Santos v. Dist. Council*, 619 F.2d 963, 969 (2d Cir. 1980)).  Thus, "[o]nce a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs cannot be treated as a continuing violation that preclude[s] the running of the limitations period."  *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) (citation omitted).

The accrual date on which the statute of limitations begins to run depends on the nature of a union's alleged breach of the duty of fair representation.  In "a hybrid action alleging the Union's inadequate representation during the course of an arbitration hearing, [a litigant] cannot be expected to maintain the action before there has been any decision issued in the arbitration." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 164 (2d Cir. 1989).  Conversely, "[w]here a union refuses or neglects to assist a union member . . . decides to stop assisting a member . . . or acts against the interests of a member . . . a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."  *Id.* at 165.

Thus, in claims where "a union has been less than cooperative," "pinpointing an accrual date can be difficult," *Cohen*, 68 F.3d at 68, but courts in this Circuit have found that claims may accrue when: (1) it becomes clear that a union will not file a grievance or take a matter to arbitration, *id.* at 69; *Arnold v. 1199 SEIU*, No. 09 CIV.5576 (DLC), 2009 WL 4823906, at *4 (S.D.N.Y. Dec. 15, 2009), *aff'd*, 420 F. App'x 48 (2d Cir. 2011); *Howell v. 1199 Union*, No. 14 CIV. 0174 AT FM, 2015 WL 273655, at *4 (S.D.N.Y. Jan. 16, 2015); *Brown v. Montefiore Med. Ctr.*, No. 15-CV-724 (VSB), 2017 WL 11512629, at *13 (S.D.N.Y. Mar. 21, 2017); *Pozo v. J & J Hotel Co.*, No. 06CIV.2004(RCC)(AJP), 2007 WL 1376403, at *21 (S.D.N.Y. May 10, 2007), (2) the union fails to do so within a reasonable time, *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 115 (2d Cir. 1997); *Urena v. Am. Airlines, Inc.*, 152 F. App'x 63, 65 (2d Cir. 2005); *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 286 (S.D.N.Y. 2014), (3) when a plaintiff files a grievance following the union's failure to do so, *Hussein v. Sheraton New York Hotel*, 100 F. Supp. 2d 203, 207 (S.D.N.Y. 2000), (4) once the plaintiff complains to a union about not receiving relevant benefits, *Tompkins v. Loc. 32BJ,*

*SEIU*, No. 11 CIV. 0414 KBF, 2012 WL 1267876, at *11 (S.D.N.Y. Apr. 12, 2012), or (5) when

a plaintiff files a complaint or grievance about the union itself, *McAllister v. Quick Park*, No.

16CV9885GHWRLE, 2017 WL 4477057, at *7 (S.D.N.Y. Sept. 11, 2017); *Cano v. SEIU Loc.*

*32BJ*, No. 19CV08810PAEKHP, 2021 WL 4927166, at *13 (S.D.N.Y. June 15, 2021), report

and recommendation adopted, No. 19CIV8810PAEKHP, 2021 WL 4480274 (S.D.N.Y. Sept. 30,

2021).

     Plaintiff summarizes her DFR claim by stating that "PATH and BLET's Collective

Bargaining Agreement ('CBA') has set contractual agreements that were not followed when it

came to handling my complaints at work, my hearings, and arbitration," (Am. Compl. ¶ 207) and

that "BLET denied [her] representation and after some time doing that they then represented me

unfairly.  BLET failed to initiate grievances on [her] behalf.  Furthermore, they denied and delay

my access to the CBA, failed to fairly represent me, and mishandled my hearings and

Arbitration.  They deliberately provided false information to me and arbitration, well also

assisting PATH in withhold information from arbitration to sabotage the outcome of the hearings

and my employment," (*id.* ¶ 208).  Her Amended Complaint thus begins with BLET failing to

follow procedures for handling her complaint, continues through various failures to initiate

grievances and mishandling the investigation against her, and culminates in the failure to handle

her arbitration properly.

     This matter was initially filed on November 16, 2020, (Doc. 2), so the six-month statute

of limitations bars claims that accrued before May 16, 2020.  Plaintiff indicates that BLET's

failures to provide her with documents began in late August 2019.  (Am. Compl. ¶¶ 219, 224.)

At an unspecified later time in 2019, Plaintiff "filed a grievance on [her] own behalf as time was

running out."  (*Id.* ¶ 224.)  BLET only filed a grievance on her behalf at some later unspecified

date.  (*Id.* ¶¶ 228.)  Numerous alleged failures on BLET's part occurred after this.  On October 21, 2019, Plaintiff reported that BLET failed to effectively represent her in an investigative hearing, (*id.* ¶ 230), and continued to perform inadequately in subsequent hearings in mid-December 2019, (*id.* ¶¶ 235–36), and for approximately seven months in the run-up to the arbitration hearing, (*id.* ¶¶ 238–44).  Thus, while Plaintiff states that she only became aware of the conduct giving rise to her DFR claim on October 29, 2020, when she participated in the arbitration hearing, (*id.* ¶ 245), many of her DFR allegations concern BLET's failure to initiate the grievance proceeding, provide her with documents, or properly handle investigating hearings.  By Plaintiff's own account, she was aware of these issues in real time as they occurred.  At minimum, she knew by September to October 2019 that BLET was violating its duties because she filed her own grievance, (*id.* ¶ 224), and was dissatisfied with its performance at an October 2019 investigative hearing.  Thus, the situation is comparable to those where a plaintiff files a grievance once the union refuses to do so.  In such cases, the cause of action accrues, at minimum, once the grievance is filed, *see, e.g.*, *Cohen*, 68 F.3d at 69; *Pozo*, 2007 WL 1376403, at *21, even where the plaintiff is pro se and entitled to the deferential review that status provides, *see, e.g.*, *Arnold*, 2009 WL 4823906, at *4; *Howell*, 2015 WL 273655, at *4; *Brown*, 2017 WL 11512629, at *13.  After the cause of action accrues, further failures such as the ones Plaintiff alleges are the kind of continuous violations that do not preclude the running of the statute of limitations.  *Buttry*, 68 F.3d at 1492.[12]

---

[12] Plaintiff's arguments that New York state executive orders tolled the statutes of limitations related to the causes of action in this case during the COVID-19 pandemic are without merit because these orders tolled only deadlines provided for by state law, not federal law.  *See, e.g.*, *Rich v. New York*, No. 21 CIV. 3835 (AT), 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022) ("The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period—but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.")  Plaintiff's tolling argument is thus without merit because the six-month deadline is provided by federal law.  *Cohen*, 68 F.3d at 67.

### 2. Breach of Duty of Fair Representation

Even construing Plaintiff's DFR claim to raise the strongest arguments that it suggests, *Brownell*, 446 F.3d at 310, making every reasonable inference in her favor, *Rowley*, 569 F.3d at 43, and assuming that her complaints were not barred by the statute of limitations, Plaintiff does not sufficiently allege DFR claims.

To state a DFR claim, a plaintiff must allege "conduct toward a member [that] is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). A union's actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citations omitted). Thus, "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994). Accordingly, "[t]actical errors are insufficient to show a breach of the duty of fair representation." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989); *see also Guerrero v. Soft Drink & Brewery Workers Union*, No. 15-CV-911, 2016 WL 631296, at *4 (S.D.N.Y. Feb. 16, 2016) ("[T]he union's failure to call certain witnesses at the hearing, and the union's failure to allege or argue fraud against [the employer] for the [employee's] intentional misrepresentation to the shop steward," were unactionable "tactical missteps"); *Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 17-CV-2309-AMD-RML, 2020 WL 3104048, at *3 (E.D.N.Y. June 11, 2020) (dismissing DFR claims based on allegations that union withheld and declined to present evidence and asked no or different questions than the plaintiff desired). A plaintiff must also show that there is "a causal connection between the

union's wrongful conduct and their injuries." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d
120, 126 (2d Cir. 1998).  "A union's acts are discriminatory when 'substantial evidence'
indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to
legitimate union objectives.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir.
2010).  A "union acts in bad faith when it acts with an improper intent, purpose, or motive."
*Spellacy*, 156 F.3d at 126 (citations omitted).  Bad faith acts include "fraud, dishonesty, and
other intentionally misleading conduct," *id.*, and in such cases, "substantial evidence of fraud,
deceitful action or dishonest conduct is required to show a breach of the duty of fair
representation."  *Ryan v. New York Newspaper Printing Pressmen's Union No. 2*, 590 F.2d 451,
455 (2d Cir. 1979) (cleaned up).   Finally, "[a]ny substantive examination of a union's
performance . . . must be highly deferential."  *O'Neill*, 499 U.S. at 78.

Plaintiff's allegations do not meet this high bar.  She alleges arbitrary and bad faith
conduct, but not discriminatory conduct.  (Am. Compl. ¶ 206.)  Many of her allegations are
grounded in disagreements between her and BLET representatives over the tactical approach to
and strategy involved in conduct during meetings with her supervisors and the investigative
hearing.  These allegations include BLET representatives' failure to speak on her behalf in
meetings or to present the documentation Plaintiff requested, (*id*. ¶¶ 216, 220, 229–30, 232–33,
245), advising Plaintiff to not ask certain questions or make certain points during meetings and at
the hearing, (*id*. ¶¶ 232, 244), or refusing to present Plaintiff's requested documentation at the
hearing and presenting other documentation instead, (*id*. ¶¶ 234–37, 239).  Assuming these were
even errors, they are the kind of tactical errors that do not show arbitrariness.

Plaintiff also alleges delays in receiving documentation to file her grievance and for the
investigative hearing.  (*Id*. ¶¶ 223–25, 238–39.)  Mere delay in processing a request is not itself

an arbitrary act.  *See Rahman v. Museum of Natural History, City-of New York*, 2012 WL

1077679, at *5 (E.D.N.Y. 2012) (holding that two-year delay in making arbitration

determination was not itself a violation of the duty of fair representation).  "[C]ourts typically

require evidence of prejudice, non-compliance with time limits set forth in a CBA, egregious

departure from standard union practice, or other evidence of bad faith before basing a DFR

violation on too-slow grievance of a claim."  *Bejjani v. Manhattan Sheraton Corp.*, No. 12-cv-

6618 (JPO), 2013 WL 3237845, at *11 (S.D.N.Y. June 27, 2013) *aff'd*, 567 F. App'x 60 (2d Cir.

2014); *see also Sahni v. Staff Attorneys Association*, 2016 WL 1241524, at *8 (S.D.N.Y. 2016)

(concluding that there was no prejudice from delayed processing because the complaint

"contain[ed] no allegations that the Union's delay in arbitrating Plaintiff's involuntary transfer

and suspension grievances violated any of the time limits set forth in the CBA").  Here, Plaintiff

still was able to receive documentation, file her grievance, and attend the hearing, so there is no

"causal connection" between the conduct and her injuries.  *Spellacy,* 156 F.3d at 120.  Moreover,

BLET's actions did not cause her to miss any deadlines or overrun any time limits to

demonstrate bad faith or arbitrariness.

Similarly, Plaintiff alleges that BLET representatives "deliberately sent mail

correspondence to the wrong address which nearly hindered [Plaintiff] from participating in the

[hearing]."  (Am. Compl. ¶¶ 240–41.)  Nearly hindering Plaintiff's ability to participate in the

hearing is insufficient since Plaintiff participated in the hearing; therefore, there is also no

"causal connection" between any alleged deliberate effort to hinder her involvement and her

injuries.  *Spellacy,* 156 F.3d at 120.  Nor is there any "evidence of prejudice, non-compliance

with time limits set forth in a CBA, [or] egregious departure from standard union practice,"

*Bejjani*, 2013 WL 3237845, at *11.  As such, even giving a liberal reading to the allegations in

Plaintiff's Amended Complaint, and making reasonable inferences in her favor, *Brownell*, 446 F.3d at 310; *Rowley*, 569 F.3d at 43, the Amended Complaint suggests, at worst, tactical errors or negligence, which are insufficient to support a DFR claim.  *See Felton*, 2020 WL 3104048, at *3. For these reasons, I dismiss Plaintiff's claims against Defendant BLET in their entirety.

### C.  *Leave to Amend*

Upon granting Defendants' motions to dismiss, Plaintiff requests that I grant her leave to file a second amended complaint to address any deficiencies.  (MTD Opp. 1; BLET Opp. 1.) "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  Plaintiff has already amended her complaint once.  Plaintiff has included numerous detailed allegations against Defendants, spanning over thirty pages with line spacing that is visibly less than normal double spacing.  (*See generally* Am. Compl.)  Specifically, as discussed *supra*, the state law claims against the Individual Defendants do not apply to employees in their positions, and no additional facts would allow application.  Regarding Plaintiff's claims against BLET, Plaintiff has already supplied a lengthy set of facts and based on those facts, I cannot conceive any additional legal bases or reasoning that could support Plaintiff's legal theories.  I therefore find that leave to amend would not offer Plaintiff the opportunity to meritoriously address any deficiencies. Plaintiff may pursue the remaining unopposed claims against Defendants PATH and Port Authority.

### V.   <u>Conclusion</u>

For the reasons stated herein, the partial motion to dismiss filed by Defendants PATH, Port Authority, Millard Corbett, Moyaah Phillips, David Volk, and Raishea Haines is

GRANTED.  BLET's motion to dismiss all of the claims against it is GRANTED.  The unopposed claims against Defendants PATH and Port Authority remain.

The Clerk of Court is respectfully directed to terminate the open motions at Docs. 11, 36, and 42 and dismiss Corbett, Phillips, Volk, Haines, and BLET from the action.  Defendants PATH and Port Authority shall file an answer to the Amended Complaint within twenty-one days of the filing of this Opinion & Order.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: August 25, 2023
       New York, New York

_____
Vernon S. Broderick
United States District Judge